1  Daniel L. Germain (CA Bar No. 143334)
2  ROSMAN & GERMAIN LLP
   16311 Ventura Blvd., Suite 1200
3  Encino, CA  91436-2152
4  Telephone: (818) 788-0877
   Facsimile: (818) 788-0885
5  E-Mail: R&G@Lalawyer.com
6
7  David M. Cialkowski (MN Bar No. 306526)
   Brian C. Gudmundson (MN Bar No. 336695)
8  ZIMMERMAN REED, PLLP
9  1100 IDS Center
   80 South 8th Street
10 Minneapolis, MN  55402
11 Telephone: (612) 341-0400
   Facsimile: (612) 341-0844
12 E-Mail: David.Cialkowski@zimmreed.com
13 E-Mail: Brian.Gudmundson@zimmreed.com
14
15 *Attorneys for Plaintiff and the Proposed Class*
16                UNITED STATES DISTRICT COURT
17            FOR THE CENTRAL DISTRICT OF CALIFORNIA

18 ALEXANDRA KONDRACKE,              ) Case No.
   individually and on behalf of all others ) CV12- 05630 (AG(SSx)
19 similarly situated,               )
                                     ) **CLASS ACTION**
20                                   )
21           Plaintiff,             ) **CLASS ACTION COMPLAINT FOR**
        v.                          ) **VIOLATION OF THE CONSUMERS**
22                                   ) **LEGAL REMEDIES ACT (CIVIL CODE**
                                     ) **§1750, *ET SEQ.*); VIOLATION OF THE**
23 HANOVER DIRECT, INC., a          ) **UNFAIR COMPETITION LAW**
   Delaware corporation; THE        ) **(BUSINESS & PROFESSIONS CODE**
24 COMPANY STORE FACTORY, INC.,     ) **§17200, *ET SEQ.*); VIOLATION OF THE**
   a Delaware corporation; UNITED   ) **UNFAIR COMPETITION LAW**
25 MARKETING GROUP, LLC, an         ) **(BUSINESS AND PROFESSIONS CODE**
                                     ) **§17500 *ET SEQ.*); BREACH OF**
26 Illinois limited liability company, ) **CONTRACT; QUASI-CONTRACT**
                                     )
27                                   ) **JURY TRIAL DEMANDED**
                                     )
28           Defendants.            )
   _____ )

                        - 1 -

                 CLASS ACTION COMPLAINT

# INTRODUCTION

Plaintiff Alexandra Kondracke ("Plaintiff"), by and through her counsel of record, Rosman & Germain LLP and Zimmerman Reed, PLLP, bring this Class Action Complaint on behalf of herself and all others similarly situated, and demand a trial by jury, against Defendants Hanover Direct, Inc. ("Hanover Direct"), The Company Store Factory, Inc. ("The Company Store"), and United Marketing Group, LLC ("UMG"),  individually and through any affiliates, parents, subsidiaries, divisions, departments, or agents (collectively, "Defendants"), as follows:

1.      This action involves Defendants' perpetration of unlawful, unfair, or fraudulent business acts or practices and unfair, deceptive, untrue, or misleading advertisements concerning the "Buyers Edge Membership Program" ("Buyers Edge"), offered by Defendants in California and throughout the United States.

2.      In this case, Plaintiff contacted The Company Store by telephone to place an order for consumer merchandise. In so doing, Plaintiff provided her credit card and other confidential information to a representative of The Company Store for the sole purpose of charging her credit card for the merchandise and delivery of same. However, unknown to Plaintiff, after submitting this highly sensitive information, The Company Store and its parent corporation, Hanover Direct, transmitted her name, address and other confidential information to Defendant UMG. Thereafter, The Company Store and Hanover Direct caused a $99 charge to be applied to Plaintiff's credit card account on two separate occasions.

3.      Because The Company Store and Hanover Direct remit a portion of the revenue they obtain under this scheme to UMG, all Defendants have a vested interest in continuing their business relationship with the maximum disregard for consumer authorization and post-transaction complaints.

4.      Working in deliberate cooperation with each other, Defendants, without authorization, systematically placed and continue to place charges on the credit card or debit card accounts of thousands of consumers nationwide. All Defendants have profited

from these unauthorized charges and have taken steps to actively continue the acts or practices set forth in this Complaint.

5. The World Wide Web is awash with consumer complaints arising from Defendants' tactics with Buyers Edge. As set forth below, these complaints detail the unlawful, unfair, or fraudulent business acts or practices at the heart of Buyers Edge.

6. By enrolling consumers in Buyers Edge, Defendants violated the Unfair Competition Law, Business & Professions Code §17200 *et seq*. and Business & Professions Code §17500 *et seq*. ("UCL"), the Consumers Legal Remedies Act, California Civil Code §1750 *et seq*. ("CLRA"), and duties established at common law barring breach of contract. By their misconduct, Defendants have violated statutory and common law and retained ill-gotten gains at the expense of Plaintiff and the Classes. Plaintiff and the Classes are entitled to restitution, damages, equitable relief, and all other available remedies.

7. Since Defendants engaged in their misconduct with respect to Plaintiff's transaction in the same manner as to numerous other consumers, a class action is the superior means of resolving these issues for all affected consumers.

## PARTIES

8. At all times relevant hereto, Plaintiff Alexandra Kondracke was a resident of California who resided in the city and county of Los Angeles.

9. Defendant Hanover Direct, Inc. ("Hanover Direct") is a Delaware corporation, which maintains its headquarters and principal place of business at 1500 Harbor Boulevard, Weehawken, NJ 07086.

10. Defendant The Company Store Factory, Inc. ("The Company Store") is a Delaware corporation, which maintains its headquarters and principal place of business at 1500 Harbor Boulevard, Weehawken, NJ 07086.

11. Defendant United Marketing Group, LLC ("UMG") is an Illinois limited liability company, which maintains its headquarters and principal place of business at 929 North Plum Grove Road, Schaumburg, Illinois 60173.

CLASS ACTION COMPLAINT

## JURISDICTION AND VENUE

12.    This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. 1332(d).  Plaintiff seeks to prosecute this class action on a nationwide basis, satisfying CAFA's diversity requirement, because (a) at least one member of the putative classes is a citizen of a state different from Defendants, (b) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and (c) none of the exceptions under that subsection apply to this action.  28 U.S.C. §1332(d)(2)(A).

13.    The Court has personal jurisdiction over each of the Defendants because each Defendant transacts significant amounts of business in this state with consumers, including Plaintiff.

14.    Venue is additionally proper because a substantial part of the events, conduct or omissions giving rise to the claims herein occurred in or emanated from this state and Defendants engaged in the complained-of transactions with Plaintiff in this District.

## FACTS COMMON TO ALL COUNTS

15.    Plaintiff brings this case individually and on behalf of two classes of consumers who were charged fees one or more times by Defendants, including but not limited to, fees for a membership program known as "Buyers Edge." Under this program, Defendants automatically enroll and charge each consumer for membership in Buyers Edge at the recurring yearly rate of $99, unless each consumer is able to successfully cancel the membership prior to the imposition of the charge.

16.    Defendant Hanover Direct's use of Buyers Edge to generate revenue was described in a company valuation report filed with the SEC in 2006. According to the report:

> The Company operates three call centers in La Crosse, Wisconsin; Hanover, Pennsylvania; and York, Pennsylvania. All centers take in-bound calls from customers for the various catalogs to place orders. At the end of every sales call, upsells are offered.

> The first offer is the Buyers' Edge by United Marketing Group, a third-party money saving membership; this program was launched in October 2006. Employees receive incentive payments per membership sold with a quarterly sales contest featuring bonus payouts.

17.     Hanover Direct's marketing of Buyers Edge is dictated by a contract with UMG. According to the SEC filing, "All calls [regarding 'upsells'] are recorded with regular monitoring to ensure compliance." Plaintiff is unaware of Hanover Direct's contractual obligations to UMG.

18.     Hanover Direct's SEC filing also described in detail the negative option nature of its "membership programs" and the "extremely profitable" nature of the programs:

> *Third-Party Membership Programs*. The Company markets and offers a variety of membership programs to its catalog customers through Hanover's call centers when they call to place an order. Hanover also offers membership programs on its websites. The membership programs offer members discounts on a wide variety of goods and services. Initially, prospective members participate in a 30-day trial period that, unless canceled, is automatically converted into a one-year membership. Memberships are automatically renewed at the end of each year unless canceled by the member.
>
> ***
>
> Membership programs are extremely profitable for the Company. In fact, in 2005 membership income of $10.7 million exceeded operating cash flow from all other Hanover brands except *The Company Store*. Membership income totaled $7.0 million in 2004.

19.     Buyers Edge purports to provide various discounts and benefits applicable to a variety of companies with which UMG contracts. However, the overwhelming majority

---

CLASS ACTION COMPLAINT

of consumers "enrolled" by Defendants in Buyers Edge are entirely unaware they have been made part of the program or what the program even provides. These consumers are repeatedly charged for Buyers Edge and get nothing in return.

20.     The following is a sample of Internet postings by consumers regarding the unlawful, unfair, or fraudulent business acts or practices perpetrated by Defendants:

- I ordered sheets from this merchant. On the phone, I was asked if I was interested in membership in Buyer's Edge, some kind of membership program. I said no. Two months later, a charge for $99 shows up on my credit card listed as HDI Company Store. At first I didn't think [anything] about it [because] I had ordered [from the] store but then I realized that I had already paid that bill. I called the number on my statement and asked for the charges to be reversed. This company said their name was United Marketing and they are based in Illinois. My credit card number was passed to them without my permission by The Company Store.

- I found myself in the same situation. During my daily verification of our charges to our bank account I found a $99 charge from HDI COM. Upon an internet search (because I couldn't remember who or what this was) I found several other people [who] had the same issue. So I contacted The Company Store & explained I never received the $50 Visa gift card I [was] promised or the information. They promptly gave me the # to Buyer's Edge (866-424-7100). To which I contacted them & explained to them the same info. Veronica my representative advised that I would be credited the $99. Make sure you document everything that you said & that was said to you, including name of person, time & date. It will help out your case if you have to go back to them again. Hope this has been helpful for anyone who reads it. God Bless

- We, too, check our credit card account, on line, regularly and found a $99 charge from HDI Co. I had to research the name through BING and found this page. We had ordered an item from the Company Store and had an account number and phone number. I called, spoke to an agent, who explained about something called a Buyer's Edge Program, which cost $99. When I told her we had not ordered such a program I was transferred to Customer Service, where an agent, Lucas, said he would arrange a refund to our credit card. It is all very disconcerting and reinforces the need to carefully review credit card charges.

CLASS ACTION COMPLAINT

- Thank you, thank you for this information! I just found this on my credit card statement, and am not happy! I had no idea what this charge was, and googled it, found your page. Very helpful! I will be demanding a refund tomorrow. I will never order anything from the company store again. I had ordered just one item, months ago, and have no idea what this $99 charge is about. Shame on The Company Store for being associated with HDI whomever!

- The Company Store automatically signs its customers up for 'The Buyer's Edge' which is supposedly a discount program allowing one to purchase gift cards at a discount. I recently discovered that I've been getting yearly charges for $149.99 since they signed me up in 2007! I had no idea what The Buyer's Edge was and have never made use of their discounts. They acknowledge that The Buyer's Edge mail appears to be 'junk mail' which would account for why I wouldn't have read the mail if I received it. While The Buyer's Edge did cancel my program and refund the latest charge, The Company Store refused any assistance. What a major disappointment from a company w/ quality products that I've ordered from many times. The Company Store has lost my business forever.

- I was contacted by Amex a couple months after I placed an order at the Company Store, and they asked about a $99.00 charge for being a member of 'The Buyers Edge'. I do not recall joining any buying group through The Company Store and NEVER have joined any buying group of that nature. When I called the Company Store to caution them that they were associating with a known scam. I was dealt with in an aloof and dull manner by a salesperson who said I agreed to the charge by providing my 4 digit code on my credit card. She was clueless that you had to provide the same code just to purchase products She then 'pitched me' after I told her; that if I were her, I would not be very happy working for a company that had subversive sales tactics, she then said that is was a ' good deal' and I could get $100 off a airline ticket. (all for on $99.00!! they had just charged me) I suggested she complain as a client was unhappy with their preditory use of my personal information. I am going to ask to be compensated for the time it takes me to remedy their situation at $75.00 an hour. I think it should take 2 hours to fix this mess. Too Bad, they have lost a customer for life. And an outside sales advocate. There [is] far more competition now for [similar] products and without having to cancel my

CLASS ACTION COMPLAINT

credit card and revolving charges. Who needs to pay money to save money in this economy?

- While reviewing my visa statement, I noticed a charge for $99 from HDI CO STORE BUYERS ED 866-4247100 NJ. Not knowing what it was for, I called the phone number given. As I was doing this, I googled HDI and read a Rip-off Report from Diana in Columbus stating that her charge was related to a purchase from The Company Store. I did recently purchase something from The Company Store and do remember the sales person offering me a free trial on something. I always say no to these so I was confident that I had not authorized this transaction. Therefore, when Sara answered my call I told her that I did not approve the transaction and I wanted it credited. When she said it would be pro-rated, I told her that I wanted my full $99 refund. She agreed, gave me a confirmation number, and stated that I should see the credit in 7 to 10 days. I will be watching for it. Thank you Rip-off Report!!

- The Company Store sells linens, towels, comforters by catalogue and online. DO NOT ORDER FROM THEM. When I ordered from them, they sent the merchandise, and passed my credit info to "HDI Buyers Edge", claiming I agreed to a "free trial offer" of this "service". I did not, never take free trials. An unauthorized charge for $99- appeared on the next month's credit card statement. 2 firm outraged phone calls from me, with threats of reporting as Fraud, got them to call Buyer's Edge, and promise a refund by credit to same card in 7-10 bus. days, with a confirmation number. This still needs to be followed up. If the credit doesn't show up, there will be another Ripoff report from me in 2 weeks. This used to be a straight company from I ordered something many years ago with no trouble. Caution: This is one of MANY companies who funnel credit information to Buyer's Edge, and other scams. See other complaints on Ripoff report and other consumer sites. Check these sites first before ordering from a company new to you.

- I ordered on line from The Company Store (which was fine) then I [received] an unauthorized charge on my Discover Card from HDI*CO STORE BUYERS EDGE 866-424-7100 NJ for $99. When I called the number at 8am the recording said they were closed...but open 7am-4pm.

---

CLASS ACTION COMPLAINT

- First of all, The Company Store has great products. The have a nice selection of quality products including down comforters, bedding, bathrobes and towels. When I placed my first order with them last year, everything was fine. I received my order without incident. The second time I ordered, I also received my order, but I got something I didn't expect: a charge on my credit card for $99 a month later. I never agree to gimmicks over the phone, and I didn't agree to a trial membership of Buyers Edge. In fact, I wasn't even offered a membership, despite their claim that they always say the order comes with the "free trial membership" with Buyers Edge. No, I simply found this charge on my credit card one month later. I have called both The Company Store and Buyers Edge and have been assured I will receive a refund, but it is outrageous that my credit card info was given to a third party. I won't be shopping there again.

21.    These complaints, and many others like them, detail Defendants' *modus operandi* with respect to Buyers Edge. With easy access to consumers' confidential information, including their name, address, telephone number, and credit card or debit card account data, with little or no disclosure of the terms of the Program, and with no authorization, Defendants cram charges onto the consumers' credit card or debit card accounts for Buyers Edge.[1] While some of these consumers received (or were promised) refunds or partial refunds for Buyers Edge, thousands of other consumers have not.

22.    Defendants enrolled Plaintiff and the Classes in Buyers Edge following the purchase of consumer goods from The Company Store, Hanover Direct and other UMG retail partners. Following such purchases, The Company Store, Hanover Direct and other UMG retail partners transmitted confidential information regarding Plaintiff and the Classes to UMG, which then enrolled them in a "trial" Membership Program. After an approximately thirty-day waiting period, during which Plaintiff and the Classes were

---

[1] Cramming is the process in which charges for products or services are placed onto a consumer's account without his knowledge or consent. Such charges are often depicted or disguised as unidentifiable line items and are relatively small. As a result, crammed charges typically go unnoticed.

CLASS ACTION COMPLAINT

unaware they were enrolled in Buyers Edge, Defendants charged Plaintiff and the Classes' credit cards or debit cards $99, on one or more occasions.

23.     In all instances, Buyers Edge is wholly unrelated to the retail transaction contemplated by Plaintiff and the Classes. Yet, for each person enrolled in Buyers Edge, each Defendant receives a share of the charge and thereby profits from each unauthorized charge.

24.     Because consumers are unaware that they are being enrolled in Buyers Edge, are unaware that their credit card or debit card will be automatically charged for Buyers Edge in perpetuity, and because the description and amount charged to the accounts by Defendants are deceptive, consumers often do not discover these charges on their credit card or debit card statements.

25.     Defendants are aware of the deceptive nature of their conduct. Defendants have received large numbers of complaints from consumers disputing the authorization for these charges. Defendants disavow any knowledge of, or responsibility for, these practices, even as each Defendant facilitates the deception by transferring customers' names, addresses, and other confidential information to UMG for the purpose of enrolling them in Buyers Edge. With ready access to consumers' confidential information, Defendants misuse such confidential information including the placement of unauthorized charges onto consumers' credit card and debit card accounts and generate substantial revenue for themselves.

26.     Through written and telephonic communications with consumers, such as those described above, and various states' attorneys general and Better Business Bureaus, Defendants obtained knowledge of the existence of and the extent of the problems encountered by consumers. Despite this knowledge and its negative impact on consumers, Defendants have made no systematic effort to rectify the numerous misrepresentations, omissions, and other problems associated with Buyers Edge, by, for example, making it an "opt in" program, discontinuing Buyers Edge and/or refunding all improper charges.

CLASS ACTION COMPLAINT

27.    For its part, UMG contracts with retail partners other than The Company Store and Hanover Direct to provide Buyers Edge on an upsell basis over the telephone.

28.    UMG targets merchants, such as Hanover Direct and The Company Store, who have access to the pre-acquired account information of active credit card and debit card customers. According to UMG, these customers provide unique marketing opportunities. UMG provided Hanover Direct and The Company Store with oversight of the sales, creative, operations, and billing of Buyers Edge. UMG also instructed Hanover Direct, The Company Store, and other retail partners how to implement the Buyers Edge Program.

### Facts Specific to Plaintiff Alexandra Kondracke

29.    In or about December 26, 2010, Plaintiff contacted The Company Store by telephone to place an order for home goods. After placing the order, Plaintiff recalls, The Company Store representative stated that the order could not be completed unless Plaintiff agreed to a "free" trial of a discount program called "Buyers Edge." When Plaintiff stated that she did not want Buyers Edge, The Company Store representative stated that the purchase could not be completed unless Plaintiff accepted the free trial. The Company Store representative stated that Buyers Edge could be cancelled without charge by calling the toll free number, which would be listed on materials shipped with Plaintiff's merchandise.

30.    Plaintiff asked for the contact information for Buyers Edge, but the sales representative stated that they did not have such information and that it would be contained in the literature accompanying her purchase. Hanover Direct, through The Company Store, failed to disclose to Plaintiff that, without further authorization, The Company Store would actually act as the agent for the Buyers Edge product, and Defendants intended to charge Plaintiff's credit card directly, rather than bill her and give her an opportunity to cancel the membership during the free trial. Instead, Plaintiff was provided no information about UMG, Buyers Edge, or how to cancel it in order to avoid being charged.

31.     Upon receipt of the merchandise in or about January 2011, Plaintiff discovered that the package did not contain any information about Buyers Edge or how to cancel the free trial. Plaintiff recalls receiving no other material from any of the Defendants describing what Buyers Edge is or how to use it.

32.     On or about February 9, 2011, almost two months after she had placed her original order with The Company Store, Defendants applied a charge of $99 to Plaintiff's credit card. The charge on Plaintiff's February 2011 credit card statement included the following cryptic notation: "HDI*CO STORE BUYERS EDGE 866-4247100 NJ." Plaintiff did not see this item listed on her credit card statement at the time and she did not receive any further communications or information of any kind from Defendants about Buyers Edge. Thereafter, on or about February 9, 2012, Defendants again applied a charge of $99 to Plaintiff's credit card. The charge on Plaintiff's February 2012 credit card statement again included the following cryptic notation: "HDI*CO STORE BUYERS EDGE 866-4247100 NJ."

33.     After discovering the second charge on her credit card, Plaintiff searched the Internet for information about the situation. Plaintiff immediately discovered numerous, similar complaints from other consumers.

34.     It is clear that Defendants have charged numerous other consumers for Buyers Edge without their knowledge or knowing consent. It is also clear that a significant number of consumers have no idea what Buyers Edge is, no idea what its purported benefits are, and have received no information about it or how to use it or how to cancel it.

## CLASS ACTION ALLEGATIONS

35.     Plaintiff brings this action pursuant to Fed. R. Civ. P. 23, on behalf of herself and the following Classes, defined as follows:

### United Marketing Group Class

All persons who made a retail purchase from a partner of United Marketing Group, LLC, were charged a fee for Buyers Edge after a phone order, and did not use it.

CLASS ACTION COMPLAINT

### The Company Store and Hanover Direct Class

All persons who made a retail purchase from The Company Store or Hanover Direct, or any affiliate or subsidiary entity, were charged a fee for Buyers Edge, and did not use it.

Specifically excluded from the Classes are the Defendants and their employees, as well as this Court and all of its employees.

36.    Numerosity: The members of the Classes are so numerous that their individual joinder is impracticable. Plaintiff is informed and believes, and on that basis alleges, that the Classes contain thousands of members. The precise number of members of the Classes is unknown to Plaintiff. The true number of members of the Classes is known by Defendants, however, and thus, may be notified of the pendency of this action by first class mail, electronic mail, and by published notice.   Upon information and belief, members of the Classes can be identified by the business records of Defendants.

37.    Commonality and predominance:   Pursuant to Federal Rules of Civil Procedure, Rule 23(a)(3) and Rule 23(b)(3), commonality and predominance are satisfied because there are questions of law and fact common to Plaintiff and the Classes, which predominate over any individual questions affecting only individual members. The common questions of law and fact include, but are not limited to:

a.   Whether Defendants' misconduct described herein is an unlawful, unfair, or fraudulent business act or practice, in violation of Bus. & Prof. Code §17200, *et seq.*

b.   Whether Defendants' misconduct described herein is an unfair, deceptive, untrue, or misleading advertisement, in violation of Bus. & Prof. Code §17500, *et seq.*;

c.   Whether Defendants' misconduct described herein constitutes a violation of the Consumers Legal Remedies Act, Civil Code §1750, e*t seq*.

d.   Whether Defendants' conduct described herein constitutes breach of contract;

    e.  Whether Defendants have been unjustly enriched as a result of their unlawful activities described herein;

    f.  Whether Defendants should provide restitution to Plaintiff and the Classes;

    g.  Whether an injunction should issue prohibiting Defendants and their successors, agents, representatives, employees, and all persons who act in concert with any of them, from making untrue or misleading statements as described in this Complaint;

    h.  The amount and type of damages and other relief to be awarded to Plaintiff and the Classes; and

    i.  Whether Plaintiff and the Classes are entitled to restitution, statutory and other damages, civil penalties, punitive damages, and/or declaratory or injunctive relief.

38.    Typicality:  Plaintiff's claims are typical of the claims of the members of the Classes. The factual and legal bases of Defendants' liability to Plaintiff and other members of the Classes are the same and resulted in similar injuries.

39.    Adequate Representation:  Plaintiff will represent and protect the interests of the Classes both fairly and adequately. She has retained counsel competent and experienced in complex class-action litigation. Plaintiff has no interests that are antagonistic to those of the Classes, and her interests do not conflict with the interests of the members of the Classes she seeks to represent.

40.    Superiority:  This class action is appropriate for certification. Class proceedings on these facts and this law are superior to all other available methods for the fair and efficient adjudication of this controversy, given that joinder of all members is impracticable. Individual litigation would increase the delay and expense to all parties due to the complex factual and legal controversies present in this case. The class action device will present far fewer management difficulties, and it will provide the benefit of a single adjudication, economies of scale, and comprehensive supervision by this Court.

CLASS ACTION COMPLAINT

41.     A representative action under Bus. & Prof. Code §17200 *et seq.* and Bus. & Prof. Code §17500 *et seq.,* is also appropriate to secure restitution for all affected members of the Classes and the general public and to obtain injunctive relief.

42.     Plaintiff is entitled to an award of attorneys' fees and costs in prosecuting this Complaint against Defendants under Civil Code §1780(e).

43.     Plaintiff is also entitled to an award of attorneys' fees and costs pursuant to Code of Civil Procedure §1021.5, because:

a.  A successful outcome in this action will result in the enforcement of important rights affecting the public interest;

b.  This action will result in the cessation of business practices which are unlawful, unfair, or fraudulent business acts or practices, and will result in restitution and/or disgorgement of monies which Defendants should not equitably retain, thereby providing significant benefit to the Classes and the general public; and/or

c.  Such fees should not, in the interest of justice, be paid out of any recovery.

## INJURY

44.     By reason of the above-described conduct and bad faith, Defendants caused actual harm, injury-in-fact, and loss of money to Plaintiff and all other members of the Classes.  Plaintiff was injured in the following ways:

a.  Plaintiff's credit card was charged $99 on two separate occasions for Buyers Edge without her knowledge or consent;

b.  Other consumers also were charged for Buyers Edge without their knowledge or consent;

c.  Once enrolled, Defendants purposely did not provide information about Buyers Edge to consumers, including what it is, how to use it, and, most importantly, how to cancel it; and

CLASS ACTION COMPLAINT

d.  Plaintiff and all other members of the Classes have each been deprived of money, including the use of their money and interest, requiring restitution.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

(Violations of the Consumers Legal Remedies Act)

45.  The allegations of the preceding paragraphs are incorporated by reference as if fully set forth herein.

46.  The Consumers Legal Remedies Act ("CLRA"), California Civil Code § 1750 *et seq*, applies to Defendants' actions and conduct because such actions and conduct pertain to transactions that were intended to result and/or resulted in the sale of goods and services to consumers.

47.  Plaintiff and each member of the Classes are "consumers" within the meaning of Civil Code § 1761(d).

48.  The sale of consumer merchandise and Buyers Edge which are the subject of this litigation are "goods" and "services" within the meaning of Civil Code § 1761(a) and (b).

49.  Defendants engaged in deceptive practices, unlawful methods of competition and/or unfair acts as defined by Civil Code §1770, to the detriment of Plaintiff and the Classes. Plaintiff and all other member of the Classes have suffered harm and damages as a proximate result of the violations of law and wrongful conduct of Defendants alleged herein.

50.  Defendants intentionally and unlawfully perpetrated harm upon Plaintiff and the Classes by the above-described acts, and as follows:

a.  In violation of Civil Code §1770(a)(5), Defendants represented that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a

- 16 –

CLASS ACTION COMPLAINT

sponsorship, approval, status, affiliation, or connection which he or she does not have;

b. In violation of Civil Code §1770(a)(9), Defendants advertised goods or services with intent not to sell them as advertised;

c. In violation of Civil Code §1770(a)(14), Defendants represented that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law;

d. In violation of Civil Code §1770(a)(17), Defendants represented that the consumer will receive a rebate, discount, or other economic benefit, if the earning of the benefit is contingent on an event to occur subsequent to the consummation of the transaction; and

e. In violation of Civil Code §1770(a)(19), Defendants inserted an unconscionable provision in a contract.

51.   Defendants concealed material information regarding Buyers Edge from Plaintiff and the Classes, as set forth herein. Had Defendants disclosed this material information, Plaintiff and each member of the Classes would not have purchased the consumer merchandise from Defendants nor authorized Defendants to charge their credit card or debit card account for Buyers Edge.

52.   Defendants' acts and omissions and unfair business practices occurred in the course of selling consumer products and violate Civil Code § 1770(a).

53.   Pursuant to the provisions of Civil Code § 1782, on March 23, 2012, Plaintiff, by and through her attorney of record, provided written notice to each Defendant, by certified mail, returned receipt requested, specifying the particular violations, and demanding that Defendants rectify the illegal acts within 30 days. Specifically, Plaintiff demanded that Defendants, and each of them, immediately provide a full and complete refund of all amounts charged for Buyers Edge to each consumer, including Plaintiff. Said Demand was received and signed for by Hanover Direct and The Company Store on March 26, 2012 and by UMG on March 29, 2012.

CLASS ACTION COMPLAINT

54.     On or about April 19, 2012, Sheila Zentner, purportedly the "Director of Teleservices" for Defendant Hanover Direct wrote to counsel for Plaintiff in response to Plaintiff's CLRA Letter. In her letter, Ms. Zentner stated, among other things, that Plaintiff was advised during her initial conversation (1) "that if she cancels the program within the first 30 days, should would not be billed for the program," (2) that if she did continue on with the program, she would be billed $99 annually by The Company Store to the credit card used on her catalog order and (3) of an automatic annual renewal using the same credit card unless she called to cancel." Ms. Zentner also claimed that Plaintiff did not "ask for the phone number for Buyer's Edge on the call or that would have been provided to her." In her letter, Ms. Zentner claimed that the conversation with Plaintiff was "recorded by sophisticated taping equipment so that we ensure we obtain verifiable consent to offers such as this one."

55.     On April 24, 2012, counsel for Plaintiff called Ms. Zentner to request a copy of the audio recording of the telephone conversation between Plaintiff and the Company Store Representative. In their conversation, Ms. Zentner agreed to provide Plaintiff's counsel with a copy of the audio recording, but indicated that it would be edited to omit credit card information. However, on May 9, 2012, after failing to receive any further communications, Counsel for Plaintiff wrote to Ms. Zentner to inquire as to the status of the audio recording. In his letter, counsel for Plaintiff stated: "I am writing to request again that you forward a copy of the audio recording so that I may confirm the numerous statements and representations made in your letter of April 19th. My client's memory of the conversation is at odds with your written description of it. Consequently, my inability to review the recorded conversation will leave me with no alternative but to proceed with litigation against all responsible parties."

56.     On May 15, 2012, Ms. Zentner wrote to Counsel for Plaintiff by e-mail stating: "Yes, I originally advised you that we are able to send recordings via e-mail as long as the credit card has been removed. However, after further discussion with individuals within my company we will not be sending this recording."

CLASS ACTION COMPLAINT

57.     Defendant UMG did not respond to Plaintiff's CLRA Letter and, to date, Defendants have not provided the relief to Plaintiff and the Classes as demanded by Plaintiff.

58.     By this action, Plaintiff and the Classes seek (a) actual damages; (b) restitution of all earnings, profits, compensation and benefits obtained by Defendants as a result of their violations of the CLRA; (c) punitive damages; (d) injunctive relief; (e) attorneys' fees and costs; and (f) other relief that this Court deems just and proper.

## SECOND CLAIM FOR RELIEF

(Violations of Business and Professions Code § 17200—Unfair Competition)

59.     The allegations of the preceding paragraphs are incorporated by reference as if fully set forth herein.

60.     The California Unfair Competition Law ("UCL") (California Business & Professions Code §17200, *et seq.,*) protects both consumers and competitors by promoting fair competition in commercial markets for goods and services.

61.     The UCL prohibits any unlawful, unfair, or fraudulent business acts or practices including, the employment of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact.

### Unlawful or Unfair Business Act or Practice

62.     As described herein, Defendants' continued utilization of unlawful and unconscionable marketing practices, and their continuing practice of charging and facilitating the charging of the Plaintiff and the Classes' credit card or debit card accounts for Buyers Edge without authorization, constitutes a deceptive act or practice in violation of the UCL.

63.     The price of a consumer product or service is a material term of any transaction as it is likely to affect a consumer's choice of, or conduct regarding, whether to purchase a product or service. Any deception related to the price of a consumer product is materially misleading.

CLASS ACTION COMPLAINT

64.     Defendants' omission of the price of Buyers Edge, and the fact that Plaintiff and the Classes would be automatically charged at all (rather than billed) in connection with their regular purchases of goods from The Company Store, Hanover Direct, and/or other UMG retail partners was an act likely to mislead Plaintiff and the Classes acting reasonably under the circumstances and constitutes a deceptive trade practice in violation of the UCL.

65.     Defendants' omissions and false representations that they would only charge Plaintiff and the Classes for the goods specifically ordered, and then proceed to transfer confidential information to UMG with the knowledge that it would result in unauthorized charges being placed on each consumer's credit card or debit card accounts, constituted a deceptive act or practice in violation of the UCL.

66.     UMG's solicitation and acceptance of confidential information belonging to Plaintiff and the Classes from Defendants and UMG's retail partners, and Defendants' enrollment and charging of those accounts without authorization, constitutes a deceptive act or practice in violation of the UCL.

67.     Defendants violated the "unfair" prong of the UCL by, among other misconduct described in this Complaint, transferring Plaintiff and the Classes' confidential information without consent after inducing them to submit the information for an unrelated product or service, omitting the fact that they would be charged without authorization, then failing to provide *any* information about Buyers Edge to the customer during the "trial period," such as what it is, how to use it, and, most importantly, how to cancel it in order to avoid the charges.  This gamesmanship occurred by design—providing a "free trial" of a product, then providing no information about the product during the "trial" period, constitutes a blatantly unfair business practice.

68.     In violation of the Electronic Funds Transfer Act, 18 U.S.C. §§ 1693, *et seq.*, and the unlawful prong of the UCL, Defendants facilitated and initiated electronic transfers of funds for Buyers Edge from the credit card and debit card accounts of Plaintiff and the Classes on a recurring basis, including credit card and debit card accounts made

---

accessible by Defendants, at substantially regular intervals, without first obtaining authorization from them or providing them with a copy of any such purported authorization. A violation of the Electronic Funds Transfer Act constitutes a violation of the UCL.

69.     In violation of the Electronic Communications Privacy Act, 18 U.S.C. §2510, *et seq.*, the Defendants unlawfully transmitted, and UMG unlawfully acquired, Plaintiff and the Classes' confidential information without the knowledge, consent, or authorization of Plaintiff and each member of the Classes. Defendants have unlawfully, knowingly, and intentionally disclosed such data to one another, and have otherwise used such data for an unlawful purpose. A violation of the Electronic Communications Privacy Act constitutes a violation of the UCL.

<strong>Fraudulent Business Act or Practice</strong>

70.     Defendants violated the "fraudulent" prong of the UCL by (1) failing to advise Plaintiff and the Classes about the full terms and conditions of Buyers Edge, including its purported benefits, how to use it, and how to cancel it, and obtain their informed consent before enrolling consumers in the Program, (2) omitting the price of Buyers Edge or the fact that Plaintiff and the Classes would be charged at all, (3) falsely representing to Plaintiff and the Classes that they would be enrolled in a "free" trial of Buyers Edge which could be cancelled at any time, when in fact, Defendants intended to enroll Plaintiff and the Classes in a "negative-option" program which required that Plaintiff and the Classes contact UMG directly to opt-out of the program to avoid an automatic and reoccurring charge on their credit card or debit card account, and/or (4) obstructing Plaintiff and the Classes' ability to opt-out of the program by failing to provide information necessary to do so, or failing to answer phone calls to UMG, or failing to timely terminate Program enrollment, or only offering a "pro-rated" refund of charges for the Program, among other evasive techniques.

CLASS ACTION COMPLAINT

71.     Plaintiff satisfies the requisite level of specificity for pleading a violation of section 17200's protection against fraudulent business acts as alleged above.  Particulars of the fraud are summarized here:

    a.  For affirmative misrepresentations:

       i.  Who:  Defendants The Company Store, Hanover Direct and UMG, including approximately 500 people known only to Hanover Direct, inclusive of the representatives, training, and management staff. Despite efforts to review the audio recording of Plaintiff's "upsell," and after initially agreeing to provide the recording, along with the identity of Defendants' upsell agent, Hanover Direct failed to provide it; Defendants' written communications with Plaintiff's counsel demonstrate that they have particularized knowledge of who spoke to Plaintiff; UMG provided instructional training on how to sell its product to The Company Store and Hanover Direct.

      ii.  What: Enrolling Plaintiff and the Classes in Buyers Edge and subsequently charging their credit card or debit card accounts, as set forth above (i.e., by informing Plaintiff and the Classes they would be enrolled in a "free trial" membership in Buyers Edge, then charging them without their knowledge or consent, and without providing sufficient information about how to cancel to avoid being charged).

     iii.  When:  During communications with consumers who contacted Defendants to purchase merchandise, and pursuant to The Company Store's and Hanover Direct's standardized policy, pattern, and practice of "upselling" UMG's Buyers Edge "product"; in Plaintiff's particular case, on or around December 26, 2010.

     iv.  Where: On the telephone, with consumers calling from throughout California and the United States to, upon information and belief, Hanover Direct's call center located in La Crosse, Wisconsin.

---

CLASS ACTION COMPLAINT

v.  How:  Through scripted telephone calls with consumers; telephone "upselling" representatives of Hanover Direct and The Company Store receive incentive payments per membership sold with a quarterly sales contest featuring bonus payouts; upon information and belief, UMG provides marketing directives for inbound "upsell" telemarketing procedures to Hanover Direct and The Company Store and other merchant partners who upsell Buyers Edge on UMG's behalf; UMG directed The Company Store's and Hanover Direct's sales, creative, printing, operations, and billing of its Buyers Edge "Vendor Supported Program."

b.  As to material omissions:

i.  All Defendants withheld the following information from Plaintiff and the Classes: (1) the full terms and conditions of Buyers Edge, including its purported benefits, how to use it, and how to cancel it, (2) confidential information would be provided to UMG who would administer the Program, (3) the price of  Buyers Edge, (4) enrollment in Buyers Edge would be on an automatic and reoccurring basis, (5) Buyers Edge was a "negative-option" program which required each consumer to contact UMG within thirty days to opt-out of the program to avoid an automatic and reoccurring charge, (6) if the consumer failed to contact UMG to cancel the Program within 30 days, Defendants would only offer a "pro-rated" refund of the charges for the Program, if at all, and (6) the relationship between each Defendant.

ii.  The material omissions occurred on or around December 26, 2010, as to the named Plaintiff.

iii.  The relationship that gave rise to the duty to speak was,

As to The Company Store and Hanover Direct, by obtaining confidential information, including names, addresses, and

_____

- 23 –

CLASS ACTION COMPLAINT

telephone numbers and credit card or debit card data, during the course of the sale of consumer goods, with the undisclosed intent of enrolling Plaintiff and the Classes in Buyers Edge.

As to UMG, by providing marketing directives for inbound "upsell" telemarketing procedures to Hanover Direct and The Company Store and other UMG retail partners who upsell Buyers Edge on UMG's behalf; and by directing The Company Store, Hanover Direct, and other UMG retail partner's sales, creative, printing, operations, and billing of its Buyers Edge "Vendor Supported Program."

All Defendants had superior knowledge as to the information withheld, and such information was material.

iv. By engaging in the deceptive conduct, all Defendants obtained substantial financial benefits by withholding the material information, particularly because they automatically charged Plaintiff's credit card annually, the fact that she did not notice it the first year fairly well guaranteed that she would not see it until the next year.

72.     The injuries caused by the Defendants' conduct are not outweighed by any countervailing benefits to consumers or competition, and neither Plaintiff nor the Classes could have reasonably avoided the injuries they sustained.

73.     Defendants intended that Plaintiff and the Classes would rely upon Defendants' deceptive conduct and not challenge the charges appearing on credit card or debit card account statements.

74.     The acts complained of herein, and each of them, constitute unfair, unlawful or fraudulent business acts or practices in violation of Business and Professions Code §17200 *et. seq.*  Such acts and practices have not abated and will continue to occur unless enjoined.

75.     The unfair, unlawful or fraudulent business acts or practices set forth above have and continue to injure Plaintiff, the Classes, and the general public and cause the loss of money. These violations have unjustly enriched Defendants at the expense of Plaintiff and the Classes. As a result, Plaintiff, the Classes and the general public are entitled to restitution, injunctive relief, and other equitable relief.

76.     The unfair, unlawful, or fraudulent business acts or practices at issue in this Complaint and carried out by all Defendants took place in the course of trade or commerce. Plaintiff and the Classes lost money or property (or lost uses of their money and interest), as a proximate result of Defendants' conduct.

77.     By this action, Plaintiff and the Classes request that Defendants be ordered to make restitution of any money, property, goods or services that may have been acquired through their violation of Business & Professions Code § 17200 as alleged in this Complaint.

78.     Pursuant to Code of Civil Procedure § 1021.5 of the Code of Civil Procedure and the Court's inherent equitable power, Plaintiff and the Classes seek recovery of their costs of suit and reasonable attorneys' fees.

## THIRD CLAIM FOR RELIEF

(Violations of Business and Professions Code § 17500—False and Misleading Statements)

79.     The allegations of the preceding paragraphs are incorporated by reference as if fully set forth herein.

80.     With intent directly or indirectly to dispose of personal property and to perform services and to induce the public to enter into obligations thereto, Defendants caused to be made and disseminated before the public in California statements concerning such personal property and services that were untrue and misleading, and which by the exercise of reasonable care should be known to be untrue and misleading.  I.e., Defendants advertised their untrue and misleading offer, among other ways, in scripted telephone calls with consumers.

CLASS ACTION COMPLAINT

81.     Members of the public, as reasonable consumers, were likely to be deceived by Defendants' statements made to the public. The statements were not mere puffery. The Company Store and Hanover Direct are well-known, venerable, and credible companies which are generally expected by the general consuming public to stand behind their products and promises. Plaintiff and the Classes were damaged by Defendants' misrepresentations and false statements.

82.     By reason of the foregoing, Plaintiff and the Classes are entitled to recover from Defendants restitution of monies paid, an accounting, injunctive relief, declaratory relief, the cost of bringing this action (including reasonable attorneys' fees and costs), and any other relief allowed by law and deemed just and equitable under the circumstances.

83.     By this action, Plaintiff and the Classes request that Defendants be ordered to make restitution of any money, property, goods or services that may have been acquired through their violation of Business & Professions Code § 17500 as alleged in this Complaint.

84.     Pursuant to Code of Civil Procedure § 1021.5 of the Code of Civil Procedure and the Court's inherent equitable power, Plaintiff and the Classes seek recovery of their costs of suit and reasonable attorneys' fees.

## FOURTH CLAIM FOR RELIEF

(Breach of Contract)

(Against Defendants The Company Store and Hanover Direct)

85.     The allegations of the preceding paragraphs are incorporated by reference as if fully set forth herein.

86.     There is a contract between Plaintiff and Defendants The Company Store and Hanover Direct. Each Defendant expressly offered to deliver quality consumer goods to Plaintiff and the Classes in return for the payment for such goods at the price listed by Defendants, in their catalogs, on the Internet, or otherwise.

87.     Plaintiff and the Classes performed their obligations under the contract. Because Defendants offered a unilateral contract, Plaintiff acceptance of and performance

under the contract were accomplished by paying the price listed by Defendants The Company Store and Hanover Direct for the purchased consumer goods.

88.     Defendants breached the contract by inserting unauthorized provisions into the contract, including but not limited to, adding a provision (unbeknownst to Plaintiff and members of the Classes) requiring Plaintiff and the Classes to pay $99 annually for Buyers Edge in addition to the regular cost of their purchase.

89.     Plaintiff and the Classes were damaged by Defendants' breach of contract in that they were charged amounts that Defendants added to their credit card and debit card accounts without the knowledge or consent of Plaintiff and the Classes.

### FIFTH CLAIM FOR RELIEF

(Alternative Relief Based on Quasi-Contract)

(Against Defendants The Company Store and Hanover Direct)

90.     The allegations of the preceding paragraphs are incorporated by reference as if fully set forth herein.

91.     Defendants The Company Store and Hanover Direct, by the actions alleged above, have collected money from Plaintiff and the Classes under such circumstances that in equity and good conscience they cannot retain, and which in justice and fairness belongs to Plaintiff and the Classes. Defendants passed along confidential information of Plaintiff and the Classes to Defendant UMG for Buyers Direct through the use of unlawful, unfair, or fraudulent business acts or practices as alleged herein.  By passing on this information unlawfully and for an unlawful purpose, Defendants The Company Store and Hanover Direct obtained money belonging to Plaintiff and the Classes.

92.     Under California law, unjust enrichment is a basis for obtaining restitution based on quasi-contract, which is an obligation created by the law without regard to the intention of the parties, and is designed to restore the aggrieved party to his or her former position by returning the money attributable to the benefit conferred. Plaintiff and the Classes seek such a remedy in the alternative to the relief they seek based on their breach of contract theory.

CLASS ACTION COMPLAINT

93.     As a result of Defendants' violations, described above, they have unjustly enriched themselves at the expense of Plaintiff and the Classes. Defendants' unjust enrichment continues to accrue as they continue to engage in unlawful business acts and practices and collect the challenged fees.

94.     Defendants' retention of money gained through unlawful and deceptive practices is unjust considering the circumstances under which the funds were obtained.

95.     As a result of the foregoing, Plaintiff and the Classes were deprived of their money and suffered losses as alleged above.

96.     To prevent their unjust enrichment, Defendants are required to identify, account for, and fully remit all of their ill-gotten gains to Plaintiff and the Classes.

97.     The amount awarded should restore to Plaintiff and the Classes the money Defendants acquired by unjust means. Defendants should be ordered to return all such amounts to Plaintiff and the Classes, together with interest thereon.

98.     By reason of the foregoing, Plaintiff and the Classes are entitled to recover from Defendants restitution, injunctive relief, declaratory relief, an accounting, and any other relief allowed by law and deemed just and equitable in the circumstances.

## VIII.  PRAYER FOR RELIEF

**THEREFORE**, Plaintiff prays for judgment against Defendants, and each of them, as follows:

A.     An Order certifying this case as a class action pursuant to Fed. R. Civ. P. 23(b)(2), (b)(3) and/or (c)(4);

B.     For restitution pursuant to Business & Professions Code §§ 17200 and 17500;

C.     For compensatory damages in an amount to be proven at trial;

D.     For an accounting;

E.     For statutory, treble and/or punitive damages to the extent permitted by law;

F.     For an injunction prohibiting Defendants and their successors, agents, representatives, employees, and all persons who act in concert with any of

them, from making untrue or misleading statements as described in this Complaint;

G.  For reasonable attorneys' fees and costs of suit pursuant to Code of Civil Procedure §1021.5 and Civil Code §1780(e) and the Court's inherent equitable power; and

H.  For such other and further relief as the Court deems just and proper.

ROSMAN & GERMAIN LLP

Dated:  June 28, 2012

Daniel L. Germain (CA Bar No. 143334)
16311 Ventura Blvd., Suite 1200
Encino, CA  91436-2152
Telephone:  (818) 788-0877
Facsimile:  (818) 788-0885
E-Mail: R&G@Lalawyer.com

David M. Cialkowski (MN Bar No. 306526)
Brian C. Gudmundson (MN Bar No. 336695)
ZIMMERMAN REED, P.L.L.P.
1100 IDS Center
80 South 8th Street
Minneapolis, MN  55402
Telephone:  (612) 341-0400
Facsimile:  (612) 341-0844
E-Mail: David.Cialkowski@zimmreed.com
E-Mail: Brian.Gudmundson@zimmreed.com
*Attorneys for Plaintiff and the Proposed Class*

- 29 -

CLASS ACTION COMPLAINT

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

ROSMAN & GERMAIN LLP

Dated:   June 28, 2012

Daniel L. Germain (CA Bar No. 143334)
16311 Ventura Blvd., Suite 1200
Encino, CA  91436-2152
Telephone:  (818) 788-0877
Facsimile:  (818) 788-0885
E-Mail: R&G@Lalawyer.com

David M. Cialkowski (MN Bar No. 306526)
Brian C. Gudmundson (MN Bar No. 336695)
ZIMMERMAN REED, P.L.L.P.
1100 IDS Center
80 South 8th Street
Minneapolis, MN  55402
Telephone:  (612) 341-0400
Facsimile:  (612) 341-0844
E-Mail: David.Cialkowski@zimmreed.com
E-Mail: Brian.Gudmundson@zimmreed.com

*Attorneys for Plaintiff and the proposed Class*

CLASS ACTION COMPLAINT

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Christina A. Snyder and the assigned discovery Magistrate Judge is Suzanne H. Segal.

The case number on all documents filed with the Court should read as follows:

## CV12- 5630 CAS (SSx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

==============================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [ ] **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [ ] **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |
|---|---|---|

Failure to file at the proper location will result in your documents being returned to you.

Daniel L. Germain (Cal. Bar No. 143334)
Rosman & Germain LLP
16311 Ventura Blvd., Suite 1200
Encino, CA 91436-2152
Telephone: (818) 788-0877
Attorneys for Plaintiff and the Proposed Class

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| Alexandra Kondracke, individually and on behalf of all others similarly situated, <br><br> PLAINTIFF(S) <br> v. <br> Hanover Direct, Inc., a Delaware corporation, The Company Store Factory, Inc., a Delaware corporation; United Marketing Group, LLC, an Illinois limited liability company, <br> DEFENDANT(S). | CASE NUMBER <br><br> CV12-05630 (AS(SS) <br><br><br> **SUMMONS** |
|---|---|

TO:   DEFENDANT(S):

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, _Rosman & Germain LLP_____, whose address is _16311 Ventura Blvd., Suite 1200, Encino, CA 91436-2152_____.  If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: JUN 28 2012

By: _____
Deputy Clerk

(Seal of the Court)

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| Alexandra Kondracke, individually and on behalf of all others similarly situated, | Hanover Direct, Inc., a Delaware corporation; The Company Store Factory, Inc., a Delaware corporation; United Marketing Group, LLC, an Illinois limited liability company, |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| Daniel L. Germain, Rosman & Germain LLP<br>16311 Ventura Blvd., Suite 1200<br>Encino, CA 91436-2152; Telephone: (818) 788-0877 | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☑ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only (Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☑ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☑ Yes  ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☑ Yes ☐ No   ☑ MONEY DEMANDED IN COMPLAINT: $ exceeds $5,000,000

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 U.S.C. section 1332(d)(2)(A)

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☑ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | REAL PROPERTY | | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | REAL PROPERTY | ☐ 210 Land Condemnation | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 220 Foreclosure | IMMIGRATION | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 230 Rent Lease & Ejectment | ☐ 462 Naturalization Application | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 240 Torts to Land | ☐ 240 Torts to Land | ☐ 463 Habeas Corpus-Alien Detainee | | FEDERAL TAX SUITS |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 290 All Other Real Property | ☐ 290 All Other Real Property | ☐ 465 Other Immigration Actions | | ☐ 871 IRS-Third Party 26 USC 7609 |

CV12-05630

**FOR OFFICE USE ONLY:**   Case Number: _____

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

CV-71 (05/08)   CIVIL COVER SHEET   Page 1 of 2

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑No  ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑No  ☐ Yes
If yes, list case number(s) _____

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)  ☐ A.  Arise from the same or closely related transactions, happenings, or events; or
                      ☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
                      ☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
                      ☐ D.  Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles, California | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Hanover Direct, Inc., Delaware and New Jersey |
| | The Company Store Factory, Inc., Delaware and New Jersey |
| | United Marketing Group, LLC, Illinois |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles, California | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved.

X.  SIGNATURE OF ATTORNEY (OR PRO PER): _____  Date  June 28, 2012

Notice to Counsel/Parties:  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law.  This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet.  (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program.  (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969 (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability.  (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended.  (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended.  (42 U.S.C. (g)) |